IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
LOGGED
ENTERED
RECEIVED

ANDREW Joseph Dicks #336+38
PLAINTIFF

SEP 1 4 2020

V.

CASE NO. _____

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

WARDEN, Allen Gang (J.C.I.)
Sgt. TRACY PALMER-TAYLOR (J.C.I.)
CO II, SAmmorA (J.C.I.)
Jessup Correctional Institution
P.O.Box 534, Jessup, MD,
20794

Acting Warden, Greg Werner (N.B.C.I.)
Acting Warden, Ronald Stotler (N.B.C.I.)
Warden Jeff NiNES (N.B.C.I.)
North Branch Correctional Institution
14100 mcmullen Hwy.
S.W. Cumberland, MD. 21502

D.P.S.C.S. (Department of Public Safety And Correction
-Al Services) AND Commissioner WAyne Hill
6776 ReisterstowN, Road 13 Alt, MD, 21215

CorizoN Health Inc. AND
M.D. Liberatus DeRozA (J.C.I.)
M.D. Getachew (N.B.C.I.)
R.N. April (N.B.C.I.)
        Defendants et, al,

I. PlAintiff has filed suit for living conditions
   Against N.B.C.I. which is pending And Against
   different defendants under case BLR-19-2554.
   B. Defendants in other suit Are:
   1. Commissioner PatriciA moore
   2. WArden FrAnk Bishop
   3. WArden Jeff NiNES
   4. Sgt. April Carr
   5. mailroom clerk mary Jane Rose
   6. CO II. Grabenstein
   7. CO II. I. murray
   8. CO II. Reynolds
   9. CO II. Bennett
   10. LT. Bradley Wilt
   11. I.G.O. Director RobiN Woolford
       (Jeff Nines is defendant in other suit)
   12. LT. JAson HArbAugh

(1)

13. Charlette Zigason (Case Manager)

14. Co II. McKinney

15. The Judge is George Levi Russell III

## II. ADMINISTRATIVE PROCEEDINGS

A. Yes, Plaintiff filed grievances that were dismissed.

B. All claims concerning living conditions in Unit #2 were dismissed as moot, due to Plaintiff being moved to Unit #3 after (4) four months. Inmate Grievance

C. Inmate Grievance granted hearing for claim #1 (unsafe shower) denied relief erroneously claiming mats were replaced after incident referring to picture of shower curtains as shower mats

D. All available remedies were exhausted and were filed with one for sleep Apnea being responded, other claims Plaintiffs waiting for responses.

## III. CLAIMS PRESENTED

1. Unsafe person conditions unsafe showers that resulted in injury, Pain and suffering.

Plaintiff brings this claim against Warden, Allen Gang, Officer Sgt. Tracy Palmer-Taylor And officer Sammora employees of D.P.S.CS, that work at Jessup Correctional Institution "Under color of the state" They are being sued in their individual And professional capacity, February 7th 2019 Plaintiff injured his wrist and hand both left side. As he stepped in shower and began to wash, he stepped on metal shower drain cap that was just sitting on drain hole, but was not bolted down secure, As he lost his balance he slipped And fell, because there were no slip-resistant mats present. The institution removed the mats months earlier and neglected to replace them.

2# Plaintiff had to be sent to prison hospital for immediate x-ray, due to cut and the swelling of hand and wrist. Mr. Dicks told Sgt. Taylor and co III Sammora about the fall and gave unsecured drain cap to Sgt. Taylor Asking her if one could call maintenance and As he was exiting the wing to go to the hospital. (See EX# 2 pg. 1- computer medical file concerning fall and ingury) Once at medical it was determined Mr. Dicks needed an x-ray and his hand and wrist was immobolized with Ace wrap and ice compress. The x-ray showed no breaks, or fractures existed the ingury was deemed a sprain due to twisting of the hand and wrist. Plaintiff had an re-ingured possibly. (See EX# 2 pg. 2 the X-ray results) old ingury to his 5th dig goint that was

3# After being treated months later Mr. Dicks hand was still swelling up and he stayed in constant pain. He was found by medical doctors to now be suffering from that of "**CHRONIC PAIN**" illness FN1
( See EX# 2 pg. (3) results of second hand X-ray, due to continuing pain and mild swelling)

4# Sgt. Tracy Palmer-Taylor and C.O. II Sommora were negligent by failing to make shower inspection as is D.P.S.C.S. policy. To inspect to ensure safety of prisoners before allowing out of cells to use showers. They did not and Mr. Dicks was ingured As a result of (A)wing officer Sammora and building head neglecting to conduct shower inspection As policy requires to be done at the begining of the shift and at end as well. Plaintiff contends shower mats had been removed (9) nine months prior to him slipping and inguring self and that All of the defendants Warden E Ans, Sgt. Taylor, officer Sammora showed, deliberate indifference to unsafe showers.

FN. 1#
Mr. Dicks suffers from Arthritis and Vitamin D deficiency. He contends that the sprain exacerbated the old pinky finger ingury and resulted in new one.

(3)

5# Warden Gang Failed to ensure Mr. Dicks Eighth Amendment Right to not be put At risk of harm and or injury due to unsafe prison conditions. He as well failed to ensure his correction Aloffpcers and maintenance workers kept showers up to adequate condition.

6# Plaintiff filed grievance concerning the unsafe showers. In grievance Mr. Dicks informed Warden Gang shower slip-resistant mats were not replaced, that he gave drain cap shower made adequately safe and to have the compensation for the avoidable pain and suffering, (see EX# 2 pages 4-5)

Warden Gang dismissed grievance stating the following "your request for administrative remedy has been investigated and was found to be without merit and is hereby dismissed. There is no evidence that shower drain cover was loose on 2/9/19. on 2/5/19 maintenance was on c-tier to tighten the drain cover in top shower. As such no further action will be taken. (see EX# 2 pg 6 - Warden Gangs response)

The response is a showing of "deliberate indifference" on so many levels. Such as he just removed that slip-resistant mats had been reported he gave drainca p to Sgt. Palmer-Taylor A fact the video footage can show, then Warden Gang speaks of maintenance tightening shower drain cover on C-wing, Mr. Dicks was housed on 2/5/19 on C-wing. And its on the complaint CA 524. So Warden Gang was ignoring facts, but admits being aware of loose drain caps At J.C.I. (see EX# 2 pg. 4 - for Mr. Dicks Housing location CA 524, not CC.

7# Warden Gang misleads when stating in his response "your remedy has been investigated". Mr. Dicks contends him nor was any staff interviewed not co II Sammoral not Sgt. Palmer-Taylor And the evidence even supports Mr. Dicks contentions.

(4)

(See EX# 2 Pgs 7-11 Williams Case Summary)
Here under "II. Investigation" where it says
Inmate interviewed on N/A. Mr. Dicks was
never interviewed by anyone for grievance.
He even failed to acknowledge slip-resistant
mat was missing. The same is for witnesses
and employees interviewed N/A. This shows
there was no investigation conducted and
authorities was really tryin to cover-up the
incident and unsafe showers. (See EX# 2 Pg. 8
- second page of case Summary) Number 4 of
Summary on EX# 2 Pg. 8 says "specific relevant
documents reviewed work order # 049035. Then
At Number (5) five it explains what the
work order" 049025 evidence is in the
specific findings of fact it says "On the
maintenance was at this location to complete
a plumbing work order the cap was secure
on 3/27/19 maintenance arrived to investigate
this complaint and same shower was still
secure." Mr. Dicks contends one (1) to even
wait from February 7th 2019 (day of incident) to
March 27, 2019 to inspect and investigate
Shower is a showing of "deliberate indifference" and this is environment that
do what you want when you want, Mr. Dicks
contends commissioner Wayne Hill of
D.P.S.C.S. encourages by following along,
Mr. Dicks appeal to commissioner Hill
And he dismiss appeal stating verbatim
Warden Gangs response. (See EX# 2 Pgs. 9-10)

Commissioner Hill said complaint was in fact
"meritorious in part" because warden Gang
failed to respond within 30 days. Warden Gang
respond April 26, 2019 well pass the required
deadline. Therefore commissioner Hill responded
May 9, 2019 ignoring (J.C.I.) authorities total
extreme violation of prison policy and "Due
process. Lt. Williams failed to conduct any
reliable investigation, Warden Gang failed
to make him adhere to policy, rules and or
regulations. (See EX# 2 Pg. 11 - Warden Gang
memo to "Department Heads" dated 5-21-19.

Here in the 1904-07? Warden Gang tells them to All ARPs must be completed within (30) days. To interview inmates as soon as possible. Warden Gang tells his staff "This reflects poorly on Administration here at J.C.I. This is unacceptable, employees will be held accountable for overdue ARPs. They are a priority and you should treat them as such (see Ex# 2 pg. 11 - Bottom of page last paragraph) All of these errors policy violations were present during Mr. Dicks grievance filings yet Mr. Dicks still was not giving any relief not even a fair response. (See Ex# 2 pg. 12 - Commissioner Hills "Memo" to Warden Gang) He speaks of providing relief specified in Appeal decision but Plaintiff did not get relief, (see Ex# 2 pg. 13 Warden Gang response memo to Comm. Wayne Hill) Here Warden Gang basically reports he told employees to start doing their jobs, but nobody speaks of even replacing shower mats or why shower drains stay unsecured (5) pounds of potential metal weapon.

(See Ex# 2 pg. 14 - Appeal to I.G.O.) And pg. 15) See pg. 16 - I.G.O. granted hearing)

See Ex# 2 pg. 17 - shower work order for CA-Top shower.
Mr. Dicks requested evidence that was granted.

8# Warden Gang And Commissioner keep talking about the incorrect shower on incorrect wing, (see Ex# 2 pg. 16 Supplemental Prehearing order) Here at No. 2, Mr. Dicks requested All work orders, reports for A-TIER Bottom shower. Mr. Dicks At No. 4 requested the entire record of ARP-JCI-0209-19, J.C.I. sent a work order for CA-Top Shower for hearing for March 27, 2019.

(6)

This work order is not only for wrong shower this is also about Mr. Dicks incident happened February 7th 2019. J.C.I. investigated a (50) pound metal shower drain dangerously unsecured (50) days later. Thats a troubling, showing of deliberate indifference.

9# Sgt. Palmer-Taylor EVEN after being inform about unsafe shower, fall and injury of Mr. Dicks and possesing the actual drain cap given to her by plaintiff. She still neglected to write ANY report about the incident. Mr. Dicks contends this is because defendants were tryin to cover-up the unsafe showers. (see EX# 2 pg. 18 Sgt. Palmer-Taylor's report dated 4/24/19) Sgt. Palmer-Taylor did not write this report until she was made aware of Mr. Dicks grievance. Plaintiff injured himself on February 7th 2019 in bottom shower. Then April 24, 2019 (a) two days before warden gang response Sgt. Palmer-Taylor writes a report. Mr. Dicks contends this is because Sgt. Palmer-Taylor and warden gang were trying to cover up that they did not care, and that (J.C.I.) has custom and or policy to be indifferent to an inmate rights and keeps an enviorment of unsafe living conditions and very unprofessional enviorment. Sgt. Palmer-Taylor report starts with "Be advised an ARP was written by inmate Andrew J. Dicks," in reference to drain cap. Defendants are so use to ignoring dangerous prison conditions and even more grossly indifferant a inmate may sustain as a result of that prison condition. That Sgt. Palmer-Taylor neglected to even document anything that concerned February 7th 2019 incident. Her report is only to protect her job and cover for her deficient non-carring actions and attitude.

(7)

The report goes on "Unsure what day I was assigned to C-building As officer in charge) all I recall inmate Dicks stating was "Oh, I'm going to get some more money out the state every chance I get As he was Laughing. Inmate Dicks stated the drain cap was loose and asked can the maintenance be made Aware. I do not recall inmate Dicks having Any injury because of it nothing further ~Sgt. Taylor to report." Mr. Dicks contends not only is this report A blatant lie, but it As well shows how Sgt. Palmer-Taylor reacts uncaring to the responsibilities her position And job requires And her constant showing of "Deliberate Indifference". Analyzing the report first she cannot recall the date of the incident, but knows that she was officer in charge of C-building though. thats one red Flag And confusing fact. Second she remember Mr. Dicks said shower drain cap was loose And Asked could maintenance be made Aware to come fix it. The drain cap is metal weighs about (1) pounds And six inches in circumference A very, very dangerous weapon. yet, still the O.I.C, Sgt. Palmer-Taylor failed to go inspect shower or write Any report. She Also said Mr. Dicks was laughing And She don't recall him having Any injury. Thats strange because the officer in charge of building has to be the person to send inmates to medical department for out of the schedule emergency visit, examination and treatment. Sgt. Palmer report itself helps to show "deliberate indifference" for waiting (2) months And (2) weeks to write A report. (see Ex#2 Pg.1) And one contrary even medical report from 2/7/19 Here says unscheduled, reason for visit left hand injury, he twisted wrist when he fell in shower.

10# Sgt. Palmer-Taylor knows Mr. Dicks has gotten settlements, only because she was also officer in charge of the building when he had disposition for case GLR-14-1016.

11# The problem is that J.C.I. does not care about safety of prisoners. Mr. Dicks arrived at J.C.I. December 17, 2018. From December 2018 up until October 2019 when Mr. Dicks was transferred out a total of (6) inmates died do to prison conditions. Even on Mr. Dicks wing CA, a white prisoner was tortured for hours in his cell until he died, because officer was sleep and that same officer was even hose a days work. J.C.I. did not video surveillance prisoner. J.C.I. is a plaintiff contends defendants are trying to cover-up how they grossly disregarded Mr. Dicks rights not to be put at a risk or injured do to unsafe and constitutionally defective and And inaction of defendant showers replace slip-resistant mats. Gang to

12# Warden Gang allowed the shower incident to be investigated by the employees who fail to keep showers safely in Adequate condition, (see Ex#2 pgs 2 and 17) He allowed for the maintenance department keepers of the showers. To conduct their own investigation of themselves. A direct conflict of interest And real cover-up, wrapped in a sad, pathetic showing of deliberate indifference. Maintenance failed to document any inspection of any CA-wing shower on date of incident February 7th, 2019. It's like allowing a wino to monitor his own drinking before driving a tractor trailor full of explosives. As he drinks, drive and smokes.

(9)

13# Plaintiff contends if the Court will sue peon a video surveillance footage from February 7th 2019 between 9:50 A.m. to 10:50 A.m. the Court will not see Mr. Dicks laughing but cringing in pain as he hands the metal drain cap to sgt. Palmer, And if you took at the footage up until around 1:30 p.m. to 2 p.m. you will see maintenance come on CA-wing to fix bottom shower drain. Mr. Dicks contends if these facts are not reviewable upon the examination of 2/7/19 C-building A-wing bottom tier front desk footage. He will withdraw this lawsuit. It is crazy how defendants everything is recorded on camera. Mr. Dicks initially filed an ARP that clearly describe shower incident and he was told to re-submit with the time of incident injury. (See Ex#2 pg.4 - re-submitted And A.R.P. it starts with "Resubmitted Mr. Dicks requested And was granted a copy of that A.R.P. but it was not in evidence given to him only (2) copies of Ex#2 pg.4) (See Ex#2 pg.16) Defendants failed to give correct bottom shower evidence And keep using either wrong wing shower correct wing wrong shower or as a "Red Herring", A deliberate throw off response And submitting of incorrect evidence. Even the investigation Warden Gang had allowed surrounding unsafe showers was another troubling fact. As well as the fact sgt. Palmer-Taylor late report is not sign by supervisor to authenticate. Mr. Dicks contends she wrote report for I.G.O. hearing. (See Ex#2 Pg. 18)

(10)

14# Plaintiff Was Granted "Formate Hearing" on February 10th 2020. Before Admin. Law Judge ms, Syeetah Hampton-El. The hearing was to find facts and if found in favor of mr. Dicks could he then be Cumpensated.

15# Mr. Dicks "Due Process" was hindered by defendants Failing to follow order granting mr. Dicks request for evidence.

16# After hearing Administrative Law Judge Syeetah Hampton-El found mr. Dicks testimony to be that of a credible one.

17# The I.G.O. hearing Judge "Findings of facts were that on 2t5l19 D.O.C, performed plumbing on CA-Top shower, that mr. Dicks stepped on unsecured shower drain hole and fell in shower, Causing injury to his left hand. The shower did not have slip-resistant mats and the shower drain cover. The Plaintiff did not have a hrs wrist when he fell in shower, twisted (See Ex# 3 pg. 4 "Findings" numbers 1,2,4) The I.G.O. of Fact" found medical diagnosed "Judge PAin syndrome for left hand And Wrist injury.

18. Inmate Grievance A.L.J. stated that Plaintiff was not entitled to relief, because After he injured himself. that D.O.C. did not "show deliberate indifference, because mr. Dicks was immediately sent to medical and was treated And that D.O.C. fixed shower And place slip-resistant mats back in shower. Then the A.L.J. incorrectly cited (2) pictures as evidence of D.O.C. replacing mats,

19# (See Ex# 3 pgs. 1-2 pictures). In the very first paragraph the A.L.J. States that two pictures taken on 2/10/2020 date of the hearing shows replaced slip-resistant shower mats hanging on showers wall. (See Ex# 4 pgs. 1-2 - shower pictures) Now the court can see those are not slip-mats. Those are actually green plastic shower curtains.

20# The A.L.J. made error thinking shower curtains was replaced mats. A.L.J. error, Therefore judgement due to claim in U.S. Dist. Ct. Seeking proper relief According to LAW.

21# Plaintiff's entitled to relief for the violation of his 8th Amendment Right. For the unsafe condition of Prison shower that **CAUSED** him to slip, fall and injure himself As A result. He now suffers "CHRONIC PAIN" And Warden Gang failed to replace slip-mats.

22# The fact defendants tried to hinder the Plaintiff's "**DUE PROCESS**" by failing to follow "Pre-hearing" order to provide to him **All** evidence needed that was requested And granted by "Office of Administrative hearings". All these facts shows Plaintiff is entitled to relief requested.

23. Plaintiff contends had D.P.S,C,S (D.O.C.) employee's working "under color of state" ) exercised required duty of care to daily inspect showers, he would not have slipped And injured self And suffered any pain due to fall.

24. Sgt. Tracey Palmer-Taylor building O.I.C. and co# Sammura Are liable for they failure to inspect showers to ensure safe to use.

(12)

25# Plaintiff is entitled to relief for the 8th Amendment violation. For the unsafe condition of showers that **CAUSED** him to slip, fall and injure himself February 7th 2019. Due to the injury from shower fall he now suffer from "chronic Pain Syndrome". The fact defendants also tried to hinder his "Due Process" by failing to follow "Pre-hearing" **ORDER** to provide <u>All</u> evidence needed that was requested by Plaintiff Andrew J. Dicks Sr. #336138. All these facts constitutes plaintiff is entitled to requested relief. Mr. Dicks contends had D.O.C. employee working under color of state exercised "the required "Duty of care" to daily **INSPECT** showers to ensure they were safe before allowing prisoners to use as policy requires. Then Mr. Dicks would not of been injured and had to file suit. But defendants failed to protect from risk of injury and than were deliberately showing indifference to "Facts of the matter" conducting unreliable investigation.

26# <u>Claim No. 2 - Denial of medical care,</u> <u>failure to inform patient of diagnoses,</u> <u>than the failure to treat for serious</u> <u>medical illness that can cause "DEATH"</u> Sleep Apnea. Division of Correction D.O.C. | D.P.S.C.S. has constitutional obligation to provide medical care for those whom it is punishing by incarceration. The duty requires that the state make available to inmates **A** level of medical care which is reasonably designed to meet the routine and health care needs of inmates. This includes even constantly make and ensure that the "contracted medical company and employee's meet this duty of care...

27# "Plaintiff files this lawsuit against Corizon Medical as a company And its employee M.D. Liberatus Derosa, RN April Here at N.B.C.I. Any other medical defendants whom may even surface during litigation. This suit is against Warden Allen Gang At J.C.I. (Jessup Correctional Inst). Against D.O.C./D.P.S.C.S. And their Commissioner Wayne Hill for allowing custom or policy to be within Maryland state prisons to not "watch dog" private medical contractor to ensure they are meeting duty of care requirement, and failure to intervene when a "meritorious" grievance is filed. Just like plaintiff grievance And not making private medical contractor adheres to duty and agreement to examine, diagnose and treat As required by 8th Amendment of the United States Constitutions.

28# For years plaintiff complained of bad headaches, chest pains, neck aches And constant fatigue due to fact that while sleeping sometime he would actually "Stop Breathing". After many sick-call visits in 2019 M.D. Liberatus Derosa put in consult for plaintiff to be tested for "sleep Apnea". Mr. Andrew Dicks SR.# 336138 began a sleep study that started September 15, 2019 And last (3) three days ending on September 18, 2019. Mr. Dicks reported to J.C.I. medical department at 10 p.m. to sleep over until around 6 a.m. the next day. This went on for (3) days. Afterwards Mr. Dicks was not even scheduled by medical at J.C.I. or N.B.C.I. to be informed of diagnosels And than treated.

(19)

29# Mr. Dicks was transferred from J.C.I., to N.B.C.I. on October 9th 2019, Therefore he patiently allowed time for (1) his medical records to follow him and (2) for the medical "sleep study" findings to be filed on computer. M.D. Deros A referred Mr. Dicks July 25, 2019 for sleep study And afterwards failed to even conduct any follow-up to inform Plaintiff that he has "MILD SLEEP APNEA". After he constantly question medical department by filing sick-slips And during medical visits for other health issue's (to no avail). Plaintiff filed grievance on February 24th 2020. Then March 2020 he was interviewed by R.N. April (last name unknown). RN April told him if he signed to drop grievance he would be seen within the week concerning sleep study results And plan for treatment. Mr. Dicks went to medical for chronic care for other medical issues, when he Asked unknown doctor about sleep study results, The doctor was oblivious And told Mr. Dicks that he'd check into it.

( See Ex# 5 pg. 1 - grievance)

30# Plaintiff Applied to review his medical files And After reviewing he seen that he was diagnosed by "SNAP DIAGNOSTICS" As having mild sleep Apnea And signed September 25 2019.
( See Ex# 5 pg. 2 - Snap Diagnostics Analysis) Mr. Dicks was not informed Respiratory sleep Apnea, nor was he offered treatment even after explaining (1) he could not ever sleep on his back And if, he chokes, (2) constant neck And chest pains (3) constant fatigue And (4) - migraine head aches.

31# Plaintiff filed A second grievance for not being seen by "CORIZON HEALTH" medical employeds concerning sleep study, results And plan to relieve symptoms suffered by the Plaintiff for Almost A year. The grievance was filed August 5th 2019, and dismissed as being repetitive. (See Ex# 5 pg. 4)

(15)

August 2020 during Medical visit for "chronic care", to check Mr. Dicks high blood pressure, Arthrrestic and Asthma. Doctor Getachew even non-chalantly telling Mr. Dicks he infact has sleep Apnea, neglected to treat him for it. He only looked on computer and confirmed After Mr. Dicks having told him that he'd researched his files and seen that his "sleep study" results showed he had "sleep Apnea". This is despicable and a clear 8th Amenderent vrolation to medical care and that being adequate care. Here Mr. Dicks suffers from G.E.R.D. (Gastro saphagus- reflux disease) an illness that effects his breathing due to constant stomach Acid, build up and nasal drip. He has, Mr. Dicks Asthma's so bad he has to take Asterord inhaler in the morning and Another before bed. He has to keep a inhaler of a different medication on his person at all times, so now he has another deadly resprratory illness on top of the other to he already has, Now add to that high blood pressure.

Corizon Health As A compAny allows their employee's to render medical clothed within An 8th Amendment vrolateon for dentAl of medical care, farlure to rnform pAtrent of dragnose's and the (2) two grrevances fired out lines A clear showing of "Deliberate Indifference" to An serrous medical need. Mr. Dicks feels as if medical is trying to allow him to suffer and die, because medical contractor's name has changed, but the same doctors, nurse's and officers run the medical department.

32# Failure of "Corison Medical" employee to inform Plaintiff of his "Sleep Apnea" diagnoses infact has inflicted physical and mental pains, thus needless suffering. Not to give patient diagnoses and treatment for eleven months is medical negligence as much as it is 8th Amend. denial of care. The Supreme Court has not wavered in it's holding that the Eighth Amendment... is, inter alia, intended to protect and safeguard a prison inmate from an environment which inflicts needless suffering, whether physical or mental. The Constitution constitutes that a level of medical care which is reasonably designed to meet medical needs of those imprisoned. For the Aforementioned reasons "Corizon Health" should be ordered to give treatment and compensate Plaintiff for compensatory And Punitive damages for clear And sad deliberate indifference...,

33# CLAIM NO. 3 - Illegal Retaliation Transfer that resulted in loss of preferred job as a BAKER. That allow (10) Ten days per month to be subtract from sentence, loss of convient (30) thirty minute rides for Family to visit. Solely for Filing grievances concerning illegal handling of United States Postal mail, and unsafe showers. While housed at J.C.I. Mr. Dicks suffered injury that needed medical treatment due to falling in unsafe medically constitutionally inadequate shower. First he Filed an grievance for J.C.I. mailroom employee's withholding of his legal mail sent to him by United States District Court. The holding of legal mail prejudiced Plaintiff doing "Habeas Corpus" And Appeal of his criminal phase.

By losing days and time having to rush to do legal research and respond, Mr. Dicks could not conduct adequate legal research and file any significantly legal argument. All because plaintiff done what the U.S. Constitution allows him the "Right" to do, that is to file grievance seeking redress. In retaliation without any administratively defining, cause the Plaintiff was transferred to North Branch Correctional Institution that is located in Cumberland Maryland.

North Branch is ultra-max punishment D.O.C. prison that houses the most aggressive prisoners in Maryland and has the highest security level and highest percentage of prisoner's serving life sentences. Prisoner's are supposedly transferred to N.B.C.I. for segregation due to severe infraction recevered in less confined institution.

34# The injury, harm or prejudice Mr. Dicks suffered from the transfer. He was again forced to participate in a earn your "Rights" level program. Even though he has not been on segregation or given formal notice on paper or verbally. Plaintiff went from having a good paying job to being idle as he has now been since october 9th 2019 day of transfer. Now Mr. Dicks is constantly threaten by the officers for suits filed and pending one BLR-17-2554.

35# Plaintiff is treated as member of an S.T.G. Where he is denied kitchen job or any job that will subtract (10) Ten days off of his sentence per month. D.P.S.CS in civil case BLR-17-2554 filed declaration of Lt. David Barnhardt claiming Mr. Dicks has been listed inactive since January 11, 2017. (see Ex# 6 Pg. 1-Decl. of Lt. Barnhardt)

Plaintiff was very much treated as gang member. He tried to get kitchen job and was told that he would have to talk to intel first. (See Ex# 6 pg. 2 - Inmate Request for the dietary job and qualifications and his case manager Mrs. A. Butts response informing he has to be cleared through intel due to S.T.G. Affiliation)

36# Mr. Dicks filed and exhausted remedies available to him as required by the P.L.R.A. (See Ex# 6 pg. 3 - grievance for retaliation transfer to Warden) Grievance was dismissed by unknown individual due to them putting symbol as signature for A.R.P. coordinator. Appeal was filed with D.P.S.C.S. commissioner and dismissed "per procedural reasons per Comar 12.02. -28.04 B(1) - inmates may not seek remedy through A.R.P. regarding case manager's recommendations and decisions. (See Ex# 6 pgs. 4 - 5 - grievance appeal) Plaintiff contends case manager did not even know he was being transferred, and case manager Bradley here at N.B.C.I. had no ideal why Mr. Dicks was sent here adding "you were working no violent write-ups don't make sense." Mr. Dicks appeal to Inmate Grievance Office and it was dismissed stating commissioner of D.O.C. can send a prisoner where they want and cited Patrick v. Secretary, 156 md.App, 423 (2004) (See Ex# 6 pg. 6 - I.B.O. letter of dismissal) Plaintiff contends he was transferred to facility designed for punishment for filing grievances at J.C.I. and filing suit against D.O.C. commissioner as retaliation and campaign to oppress and scare.

(19)

plaintiff contends the behavior exhibited in his next claim and constitutes more inguries to consider retaliation for complaints filed to prison warden, D.O.C. commissioner, Inmate Grievance office and U.S. District court case GLR-14-1016.

37# <u>CLAIM NO.4 - Unconstitutional prison</u>
<u>conditions, Equal protection, Due</u>
<u>Process violations.</u> Plaintiff arrived at North Branch October 9th 2019, and was housed in lock-up Unit #1, A-tier on a discriplinary segregational and Administrative segregational tier without any infraction pending, any lock-up time, nor had he been Administratively segregated at J.C.I. before the transfer. Mr. Dicks contends he was treated arbitrarily because of pending suit in U.S. District Court GLR-17-2554. There was no valid or legal reason to segregate without "NOTICE" or Adversarial hearing except as retaliation. The housing of Mr. Dicks on lock-up, a general population prisoner was a scare tactic an Eighth Amendment violation for cruel and unusual punishment. North Branch shows "Deliberate Indifference" to the plaintiffs protected interest's. As #there was a continued atmosphere of lack of physical safety, where there exist constant tension, anxiety and Anger between officers and inmates. Mr. Dicks was placed on lock-up upon entering North Branch only to inflict physical and mental suffering, due to restrictions within S.H.U. #1.

38# After lpsten, because officers in S.H.U. #1 denied Mr. Dicks grievance forms. Mr. Dicks was moved to special Housing Unit #2 in early November 2019. Now S.H.U. #2 is ran just like S.H.U. #1, and was found by D.R.M. (Disability Rights of Maryland) in their 2016 investigative report to be grossly inadequate for housing, especially prisoners with mental health issues. Like Mr. Dicks who suffers from Bi-polar-depression dis-order And has been medicated for since 1998 til present. Unit #2 is infested with First, Eighth, Fifth and Fourteenth Amendment And human rights violations. Unit #2 is ran as a disciplinary Unit. All three (3) meals are served in the cell, medication is delivered to the cell, your not allowed to go to main legal library that actually has law books. This was well before covid-19.

Inmates thats housed in Unit #2 only permitted to go to Unit #2 are legal library And only (2) two inhouse per session, only (1) clerk And (1) prisoner for legal research is Allowed for a population of 485 prisoners And you must right to even get on the list. Prisoners Are not allowed to go to general population relirgrous services. Mr. Dicks was not permitted to exercise his religion, unless housing manager allowed library to be used, even though Sunni Muslims went to gym to practice, which Mr. Dicks

(See Ex#7 pg. 1 - Unit #2 - mission statement) Unit #2 very own "mission statement" explains how B-trer where Mr. Dicks was housed, had to earn basic And common privileges freely given to general population prisoners.

(21)

39# The Unit #2 "Mission Statement" explains privileges Are not only restricted. The Unit Manager may suspend them at any time, these privileges are actually rights such as showers, time out of cell to exercise, going to religious services, First, and Eighth Amendment Rights afforded to Plaintiff under United States Consti- tution, Mr. Dicks had a protected liberty interest not to be treated different than other general population prisoners placing him in special confinement, forced to participate in step-down program without notice or adversarial proceeding violating his "Due process" Rights. These decisions by authorities at N.B.C.I, resulted in "Denial of Access" to the Courts, cruel and unusual punishment (22) to (23) hours per day in cell for prisoner who suffers from a mental illness (Bi-Polar-depression and Denial of mental Health evaluation and treatment for more than (3) months,.

40# Unit #2 "Mission Statement" acknowledges its a structured environment (lock-down) that rewards good behavior with the increasing of privileges (Rights). Plaintiff contends as aforementioned those privileges are constitutional rights, Unit #2 population according to individual needs divided did not see anyone from psychology dept, for Almost four months and he's a documented mental Health prisoner, prisoners are assigned to homogenous tiers, with each being unique in privileges offered, such as C-tier gets more "out of cell" time Unit #2 has varying degree's of discip̶ line Segregation. Due to space and time Unit #2 may not get the same exercise time And programs as Units #3 And 4#,

(22) (See EX #7 pg.1)

Notice "Mission statement" has no
officer, Secretary, deputy Secretary,
commissioner etc. This is because
North Branch **HAS** "commissioners"
approval to force these illegal programs
on inmates without concern for our
mental or physical health. There is
a open custom and or policy to
violate prisoner's constitutional
and human rights. Plaintiff contends
being placed on segregation in Unit#1
upon his arrival and than in Unit#2
segregation tier denied him his
"Due process" rights afforded to him.
The United States Constitution Eighth
Amendment is, inter alia, intended to
protect and safeguard a prison inmate
from an environment where degeneration
is probable and self-improvement unlikely
because of the conditions existing
conflicts rehabilitation and inflicts
needless suffering mental or physical.
While Plaintiff does not have a federal
constitutional right to rehabilitation.
He is entitled to be confined in an
environment which does not result in
his degeneration or which threatens
his mental and physical well being.
Mr. Dicks suffers from mental illness
that of Bi-polar and depressive
disorder. The N.B.C.I. officials
Are well aware as its documented.
And they speak of it in civil suit
GLR-14-1016 in case he was assaulted
at N.B.C.I. And they used his mental
health as a defense. Plaintiff only
Acknowledges to show an Eighth
Amendment violation, because he
arrived at N.B.C.I October 9, 2019
but did not see mental health
specialist until after filing a
grievance and then he was seen.
(23)

It took four Months to be seen by psychologist after filling complaint. According to D.P.S.C.S. policy Mr. Dicks should have been evaluated for mental health within (3) three days for his mental illness. During this time his Grandmother Idola F. Carter A woman that raised him died December 11, 2019. Failure to examine and treat for mental illness was an Eighth Amendment violation.

41#
Plaintiff contends the facts of losing his loving grandmother who was ill with dementia. Being put on solitary confinement. locked in his cell twenty-two (22) hours Per day, not allowed access to adequate legal library to research for criminal case(s) GLR-17-3667, GLR-17-793 and Civil GLR-17-2584, Constituted A great deal of mental anguish and stress, constantly.

42# Plaintiff filed grievance concerning N.B.C.I. segregated and unconstitutional housing of him. Explaining he was confined to his cell twenty-two (22) hours per day (2) treated tragically different than other general population inmates 1200 other prisoners (3) had not been allowed to see psychologist for extended Amount of time (4). Acting warden responded dismissing all relevant facts and figures. (See Ex# 7 pgs. 2-4)

43# Plaintiff appealed to commissioner and his grievance was dismissed following same deliberately indifferent response As Acting warden Greg Werner, therefore commissioner Wayne Hills and warden Werner failure to act makes them liable and in it makes them policy to violate the Peace, Rights and dignity of prisoner's of custom or D.P.S.C.S. prison North Branch Corr. institution within Unit #2.
(See Ex# 7 pgs 5-8)

44# Plaintiff filed a second grievance that dismissed his complaint stating it was moot, because he had After filing grievances been transferred to Unit#3 on March 6, 2020. Now the I.G.O. Acknowledged the violations but dismissed as moot, saying as if your suffering is over so there is no violation Anymore "Still were Meritorious".
( See Ex# 7 PG. 9)

45# Plaintiff Andrew Joseph Dicks suffered all of these violations and he had never been given proper "Due Process". Not Any adversarial hearing, nor written before being forced into illegal level program that resulted in multiple injuries, making Plaintiff have to earn his "Rights" constitutes legal consequences And proper redress....

46# Claim No. 5 - Denial of "Access to the Courts, inadequate legal library and deliberate indifference to First Amendment violation". North Branch has A custom and or policy that An inmate who needs Access to the courts such as the use of legal library. He must make A written request to the Seargeant And then will be put on waiting list At Seargeant discretion. Unit#2 only allowed (2) two inmates per session one the clerk And the second being the prisoner who needs to do the research. Unit#2 needs to do the least (520) five hundred And twenty prisoners. Therefore it takes months to go to legal library.

47# Plaintiff Mr. Dicks filed a request in to go to legal library to do some research for Inmate Grievance hearing before Administrative Law Judge on December 17, 2019 for a hearing that was to be held January 22, 2020. It took (8) eight days for tier officer to write back telling him to make request to the Seargent (See Ex# 8 pg. 1) The existence of prison regulations that limit an inmates access to the law library or that time limit, place and the manner in which he can engage in legal research or preparation of legal documents must be considered. In order to properly evaluate existing condition.

48# Mr. Dicks got to the legal library within (3) three weeks and learnt the legal library was actually "NOT A LEGAL LIBRARY". There was not a single book present for legal research and the computer was broken. Therefore when Mr. Dicks was called out for legal library it was an wasted and sad opportunity. So January 5, 2020 he filed written request to go to the actual Legal Library in the main building where some inmates in unit#2 could go and all inmates in units#3 and #4. Mr. Dicks recieved a response January 15, 2020 (10) ten days later telling him Computers are being fixed and that he was being added back on the 1rst. (See Ex# 8 pg. 2) Since Mr. Dicks request to go to main library was ignored and he could not prepare for either the I.G.O. hearing or Federal suit case GLR-17-2554, he filed grievance on January 26, 2020.
(See Ex# 8 pgs. 3-4)

(26)

49# Writing this grievance Mr. Dicks explained to Acting Warden Greg Werner that Unit#2 in-house legal library was constitutionally defective. He explained it was inadequate, because there were not ANY legal books to use for his research such as Maryland Rules, Corr. Services Articles or Law Journals to even be able to Know what to look for on computer, And how computer was constantly broken. (see EX#8 pg.3) Mr. Dicks explained how even the policy to write to be placed on the very long legal library list was a constitutional violation. Mr. Dicks informed Defendant Greg Werner he had current legal case(s) that he could not prepare for due to inadequate legal library. (see EX#8 pg.4) After being made aware of all of the reasons Unit#2 in-house legal library was constitutionally defective. Acting Warden Greg Werner in a showing of "deliberate indifference" dismissed the grievances ignoring facts stating that Mr. Dicks had adequate access to legal library by request to LASi system. How can he request LASi case(s) if there are no books to find legal case(s)? He also said Mr. Dicks could use the satelite computer. A computer that was broken. And (2) you have to research the books to KNOW what case(s) and the computer only has limited amount of case law. This is why books are a must for Adequate legal library, Warden Werner stated Plaintiff had been granted access on multiple occasions. Inmates are allowed 45 minute sessions.

(27)

Mr. Dicks contends he had only been to legal library by that time twice, one time computers were broken And no legal books And the Same for the Second. To be specific he was put in A room with empty shelves And no computer to look Around for one hour. (See EX#8 pg.3 - PART B Response) most of time 45 minutes.

50# Plaintiff Appeal to D.P.S.C.S. Commissioner explaining the same. Commissioner Hill dismissed Appeal stating "your ARP Appeal has been reviewed And is hereby dismissed. The Warden fully Addressed your complaint. You did not provide Any evidence to substantiate your claim that you Are not Afforded Adequate Access to library because you Are housed in Housing Unit#2 TWO." (See EX#8 pg.7) The Court can See not only is the response the Same "Blue Print" response to All of Mr. Dicks grievance's. It is Also A Showing of "Deliberate Indifference" to the Facts And clear violations when reviewed in entirety from the initial complaints, responses's And policy. (See EX#8 pgs 1,2,3,4,5,6,7,8 All of the grievances And response's)

Now pages (1) And (2) Are request to go to the Unit#2 legal library. This shows Mr. Dicks (1) has to write request And he is only allowed to go to in-house library. So the was being treated different than the other inmates not in Unit#2. And Some in Unit#2, (28)

Units #3 and #4 had access to this
And can go to main legal library to use
Books, Typewriter, Stapler And have
librarian to download docket entry
For case, Unit #2 has none of this
only one inmate clerk with limited
Ability And knowledge, Mr. Dicks claims
Are substantiated by policy, content
of grievance and Wardens response,
(see pages 3 And 4)

Commissioner Hill claims "Warden Address
Mr. Dicks complaint". This is untrue he
ignored All Facts of inAdequacy such as
NO Books, Typewriter, stApler, TApe
etc.

5)# Plaintiff appeal to Inmate Grievance and
AGAIN got same response that
Since Mr. Dicks was moved to Unit #3
on March 6, 2020 to where he was
Allowed to go to mAin legal library
thAt is Adequate, His complAint was
rendered moot, ignoring Constitutional
violAtions AlreAdy suffered.
( See Ex # 8 Pg, 8)

Here inmate grievance office ignored the fact
of Unit #2 inAdequate legal library. The
PlAintiff contends "Deliberate Indiffe-
-rence" is shown on such A wide range
its impossible to seek And obtAin
"Relief" therefore he is compelled to
file suit for some of the same
issue's Already pending before
this Court in cASE GLR-17-2554.

52# PlAintiff legal mail was Also
opened "out of his presence" And when
he filed grievance it was dismissed. Here
Mr. Dicks tried to send mail out certified.
mailroom kept sending legal mail back
saying I did not have sufficient funds.
Mr. Dicks sent legal mail Along with an
money voucher instead of stamps to pAy
postAge. Which hers Allowed And has
done on many occassions to make A
paper trail, due to fact he suffers
trAgic First Amendment violations
concerning incoming And outgoing
mail, personal And legal.
(See Inmate Account Summary sent with
complaint pages 2,3 And 4 of 17) All of
those "NR postAge fee's payment" Are
Mr. Dicks paying by money voucher
to send All mail out. Its A cheAper
way to certify. Warden Werner Admits
PlAintiff hAd four dollars And forty-eight
cents ($4.48). More than enough to cover
postage. The prison mailroom were
being malicious.

   (See Ex# 8 Pgs 9-10 - grievance)
Here Mr. Dicks explained he was trying
to use voucher for postAge And the
mailroom refused him denying Access
to courts AgAin (And legal mail illegally
      was opened.
   (See Ex# 8 Pg. 11 - copy of voucher
      showing he hAd done the same
      on march 5, 2020)

All this evidence were shown to Warden
Werner And commissioner Hill to
no AvAil still dismissed.

               (30)

( See Ex #8 pg.13 And pg.5 Appeal to
Commissioner Hill) Commissioner
Hill ignored facts And evidence,
( See Ex # 8 pg.14)

53# Both Warden Werner And Commissioner
Hill dismissed complaint, Warden
Werner even stating Mr. Dicks had
Failed to substantiate claim of his
incoming legal mail was opened
out of his presence.
( See Ex # 8 pg. 9 - Part B - response)

The legal mail was received March 12, 2020
from "Prisoner Rights Information System
of Maryland Inc. (See Ex # 8 pg. 15) the
envelope reminds "Legal mail Not to
Be opened Except in Addresees
Presence" in black bold letters.
This was the kind of envelope legal
mail came in.

On February 25th 2020 Correctional officer
B. Clites filed report Admitting that
he opened legal mail "out of Presence"
of Mr. Dicks. (See Ex # 8 pg. 16) Plaintiff
Contends that N.B.C.I. has custom And or
policy of illegally handling mail, And that
D.P.S.C.S And Inmate Grievance office
upholds custom or policy by ignoring
meritorrous complaints And evidence.
Showing "Deliberate Indifference"
to dismiss such complaints that
has merit. Plaintiff complaints that
And has not received Any response
within required sixty days.

54# CLAIM NO. — FAILED SANITATION for extended time resulting in Eighth-Amendment violation. N.B.C.I. still fails to provide sanitation (toilets/sinks) for prisoner's to have Access to during "out of cell", exercise time. When Plaintiff An prisoner that suffers from high-blood pressure and swollen prostate files complaint. The complaint is dismissed inside units for recreation. When no sink or toilet Available and if you got back to cell during break your not Allowed back out. Therefore you must Forefeit your FIRST Amendment Right to exercise Eighth Amendment to use bathroom. When outside in unit#2 there is no break if you go outside And have to Pee, you better hold it for one hour And Fifthteen minutes or soil your clothes. Units#(3) And (4) only do yard break during the evening 6 p.m. to 7:15 p.m. yard. Either way is still An violation, because you cannot function. An bodily time N.B.C.I. has been Aware of these violations for At least Six (6) years And has failed to try to correct. Mr. Dicks filed suit for these same violations. That's pending before this court for "Conditions of confinement" suit Case No. GLR-17-2554.

55# mr. Dicks Filed A.R.D. explaining And As usual Acting Warden Ronald Stotler dismissed ignoring facts of 8th Amend. violation And the health risk. (see Ex#9 Pgs.1-5- Plaintiffs grievances And received response(s)) (32)

# EXHAUSTION

56# In all of these claims Plaintiff did
exhaust all available remedies. Claims
one through five are exhausted. The
inmate grievance office failed to even
respond to sanitation complaint,
(Failure of access to toilets and sinks
during out of cell time)

# TORT CLAIMS

57# Plaintiff filed claim with Maryland
State Treasurer to put them on
Notice, Thus far he has only
recieved acknowledgement for one
of his claims concerning "Dental
Diagnose and treat prisoners.
Plaintiff contends "Pandemic" has
slowed process or suspect and
illegal handling of Plaintiffs
Mar.., (see EX#19 pgs 1-2)

# CONCLUSION

Plaintiff contends defendants are
subject to liability and legal consequence
for failure to act, actions and showing
of "Deliberate Indifference".
The fact alone that after filing suit
2017, Plaintiff still suffers many of
the many constitutional violations
again at N.B.C.I. Therefore defendants
were well aware of their illegal
actions or inaction as Mr. Dicks
grievances were so colorfully and
explained in detail emphasis added
along with tangible, credible evidence.

9-4-20
Andrew J. Dicks (33)

IV. Relief
(State briefly what you want the Court to do for you.)

To order D.P.S,C.S.(D.O.C) And
North Branch to correct constitutional
violations and Award damages to
Plaintiff And transfer him out of
N.B.C.I. indefinetly.

SIGNED THIS __4th__ day of __September__, 2020.

_Andrew D. Dicks_
Signature of Plaintiff

Andrew J. Dicks
Printed Name

14100 McMullen Hwy,
Cumberland, MD.
21502
Address

NONE
Telephone Number

NONE
Email Address

(34)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

Andrew Joseph Dicks
#336738
D.O.B -11-19-71
14100 mcmullen Hwy,
Cumberland, MD)

21502

\*

(Full name, date of birth, identification #, address of petitioner)
**Petitioner,**

Warden Allen Gang
Sgt, Tracy Palmer-Taylor
Warden Greg Werner
Ronald Stotler
Commissioner
Wayne Hill

D.P.S, C.S et,al   \*

(Full name and address of respondent)
**Respondent.**

**Case No.:**_____
(Leave blank. To be filled in by Court.)

**CERTIFICATE OF SERVICE**

I hereby certify that on __September 4th, 2020__.
a copy of __the complaint for cvvrl surt__
was mailed via first class mail, postage prepaid, to __Attorney Generals office__
__At 200 Saint Paul Pl. Balt, MD 21201__

Andrew J. Dicks
Signature of Petitioner

Andrew J. Dicks
Printed Name
14100 mcmullen Hwy.
S.W. Cumberland, MD.
21502
Address

NONE
Telephone Number

NONE
Email Address

/35)