IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDREW JOSEPH DICKS,              *

      Plaintiff,                   *

v.                               *        Civil Action No. GLR-20-2678

WARDEN ALLEN GANG, SGT.      *
TRACY PALMER-TAYLOR, ACTING
WARDEN GREG WERNER, ACTING   *
WARDEN RONALD STOTLER,
ROLAND SAMURA, JEFF NINES,    *
COMMISSIONER HILL,[1] DPSCS,
CORIZON HEALTH, INC., DR.       *
LIBERTUS DEZORAL,[2] APRIL RN,
DR. GETACHEW,               *

      Defendants.

***

<u>**MEMORANDUM OPINION**</u>

THIS MATTER is before the Court for consideration of Defendants Allen Gang, Tracy Palmer-Taylor, Greg Werner, Ronald Stotler, Roland Samura, and Jeff Nines' Motions to Dismiss or for Summary Judgment. (ECF Nos. 16, 17). The Motions are ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons that follow, Defendants' Motions to Dismiss shall be GRANTED.[3]

---

[1] The Clerk is directed to add Commissioner Hill to the docket as a Defendant.

[2] The Court will further direct the Clerk to correct the spelling of Defendant Dr. Libertus Dezoral to Dr. Liberatus DeRosa, as DeRosa is referred to elsewhere in the Complaint. (See Compl. at 14).

[3] Dicks has also filed a Motion to Appoint Counsel. (ECF No. 23). For the reasons set forth below, the Court will deny the Motion.

## I.    BACKGROUND

**A.    <u>Dicks' Allegations</u>**

**1.    Slip and Fall Claim**

Dicks alleges that on February 7, 2019, while confined to Jessup Correctional Institution ("JCI"), he injured his left wrist and hand when he stepped into the shower and tripped on an unsecured drain cap. (Compl. at 2, ECF No. 1). He complains that JCI staff had also removed all slip-resistant mats from the shower several months earlier and failed to replace them. (<u>Id.</u> at 2–3). He filed his Complaint against Defendants Warden Allen Gang, Officer Roland Samura, and Sergeant Tracy Palmer-Taylor in their "individual and professional capacity" for the unsafe condition of the shower. (<u>Id.</u> at 2). He claims Gang, Samura, and Palmer-Taylor were negligent when they failed to maintain the shower in a safe condition or to properly inspect the shower before prisoners used it. (<u>Id.</u> at 3). He alleges that officers are supposed to conduct shower inspections at the beginning and the end of the shift. (<u>Id.</u>).

Immediately following Dicks' fall, he was taken for an x-ray of his wrist because it was cut and swollen. (<u>Id.</u> at 3). Dicks' hand and wrist were immobilized with an Ace bandage and he was given an ice compress. (<u>Id.</u>). The x-ray did not show a fracture and the injury to Dicks' wrist was diagnosed as a sprain. (<u>Id.</u>). Dicks asserts that "months later" his hand was still swollen and painful. (<u>Id.</u>). Medical providers who treated Dicks' wrist determined he was suffering from chronic pain. (<u>Id.</u>).

Dicks filed an administrative remedy procedure complaint ("ARP") with Gang. (<u>Id.</u> at 4–5). In his ARP, Dicks informed Gang that the slip-resistant mats were not replaced

and that he gave the loose shower drain cap to Palmer-Taylor. (Id. at 4). He asked to have the shower made safe and for compensation for his injury. (Id.). Gang dismissed the ARP as having no merit in a response dated March 27, 2019. (Id. at 5). Gang's response stated that there was no evidence that the shower drain cover was loose on February 7, 2019, because two days earlier maintenance had been "on C-tier" to tighten the drain cover in the top shower. (Id. at 4). Dicks maintains that Gang's response is evidence of deliberate indifference because (a) he did not address the lack of slip-resistant mats and (b) Dicks was not referring to the shower on C-tier, but rather the shower on A-tier, where he was housed. (Id. at 4–5). Additionally, Dicks claims that Gang did not investigate his ARP as stated in his response. Indeed, Dicks claims that neither he nor any staff members or witnesses were interviewed prior to Gang's response. (Id.). Dicks likens Gang's assignment of responsibility for the investigation to officers who were themselves responsible for the poor condition of the shower, to "allowing a wino to monitor his own drinking before driving a tractor [trailer] full of explosives." (Id. at 9). Dicks appealed Gang's response to Defendant Commissioner Hill. (Id. at 5). Hill deemed the appeal meritorious because Gang's response to Dicks was late, but otherwise affirmed Gang's response. (Id. at 5–6).

Dicks also takes issue with Palmer-Taylor's failure to write a report about the unsecured drain cover he tripped on until Dicks filed an ARP. (Id. at 7). He claims this is evidence that Palmer-Taylor, together with Gang, were trying to cover up the "unsafe living conditions." (Id.). Dicks concludes that Palmer-Taylor's report represents only her effort to protect her job. (Id.). He points out that Palmer-Taylor states in her report that she does not recall the date she was assigned to C-building as officer in charge but goes on to state

that she recalls Dicks laughing and saying he was going to "get some more money out the State every chance" he gets.[4] (Id. at 8). Additionally, her report states that she did not recall Dicks having an injury. (Id.).

Dicks appealed the dismissal of his ARP to the Inmate Grievance Office ("IGO") and was given a hearing on February 10, 2020, before an Administrative Law Judge ("ALJ"). (Id. at 10–11). Dicks recounts the ALJ's decision, noting that she found him to be a credible witness and found that on February 5, 2019, plumbing maintenance was performed on "CA-Top Shower." (Id. at 11). Additionally, she found that Dicks stepped on an unsecured shower drain hole and fell while he was in the shower, injuring his left hand. (Id.). The ALJ found, however, that Dicks was not entitled to relief because the prison staff did not show deliberate indifference to his injury as he was immediately sent to medical where he was treated. (Id.). She further found that the shower was repaired and slip-resistant mats were replaced. (Id.). Although Dicks disputes some of the ALJ's findings of fact, he does not mention whether he appealed the decision to the appropriate State circuit court. (Id. at 12).

### 2.   Medical Claim

Dicks raises a claim against Corizon Medical "as a company and its employee[s] M.D. Liberatus DeRosa, [and] RN April," who work at North Branch Correctional Institution ("NBCI") where Dicks is currently confined. (Id. at 14). Dicks was transferred to NBCI on October 9, 2019. (Id. at 15). He states that DeRosa performed a sleep study

---

[4] Dicks explains that Palmer-Taylor is aware that he has "gotten settlements" and references Civil Action No. GLR-14-1016. (Compl. at 9).

from September 15 to 18, 2019, but claims he was never provided the diagnosis or treated. (Id. at 14). Eventually, after he filed sick call slips to obtain the results, Dicks was told that he has mild sleep apnea. (Id. at 15).

Dicks filed an ARP on February 24, 2020 concerning the delay in receiving the test results. (Id. at 15). He recalls that in March 2020, "RN April told him if he signed to drop [the ARP] he would be seen within the week concerning sleep study results and plan for treatment." (Id.). Dicks applied to review his medical files and discovered the test results in his file. (Id.). He states that he had been complaining for a full year that he could not sleep on his back and he experienced constant neck and chest pains as well as fatigue and migraine headaches. (Id.). Dicks thus filed a second ARP alleging that he had not been seen by "Corizon Health medical employees concerning [the] sleep study results and plan to relieve symptoms [he] suffered . . . for almost a year." (Id. at 15). The ARP was dismissed as repetitive. (Id.).

Dicks states that in August 2020, he was seen by Defendant Dr. Getachew in the chronic care clinic and Getachew "non-chalantly" informed him that he has sleep apnea. (Id. at 16). Dicks concludes that Getachew's cavalier attitude about the fact that Dicks has a "deadly respiratory illness," in light of Dicks' other conditions that make it difficult for him to breathe, is "despicable." (Id.). Dicks claims that Corizon Health allowed their employees to "render medical negligence to" him. (Id.).

### 3. Retaliatory Transfer Claim

Dicks alleges that his transfer from JCI to NBCI amounts to retaliation for the grievances he filed at JCI. (Id. at 17). He states that he lost a preferred job as a baker that

allowed for ten days per month of diminution of confinement credits and a convenient thirty-minute drive for his family to visit him. (Id.). Dicks recounts that he filed a grievance alleging that JCI mailroom staff had withheld his legal mail, prejudicing his effort to challenge his conviction. (Id.). He claims the delay in receiving documents from this Court caused him to "rush to do legal research and respond" and prevented him from filing "any significantly legal argument." (Id. at 18). Dicks explains he has also been prohibited from obtaining a job similar to the one he had at JCI because, as explained by his case manager, Ms. A. Butts, he "has to be cleared through intel due to STG [Security Threat Group] Affiliation." (Id. at 19). According to Dicks, his case manager at JCI did not know about his transfer and his current case manager could find nothing in his file to support the transfer. (Id.).

### 4. Conditions Claim

Dicks asserts that the conditions under which he is confined at NBCI violate the Eighth Amendment. (Id. at 20). He states that when he arrived at NBCI on October 9, 2019, he was housed in lock-up Unit 1, A-tier, a disciplinary and administrative segregation tier. (Id.). He claims he did not have a pending infraction and had not been assigned to segregation at JCI before he was transferred. (Id.). In his view, he was assigned to restrictive housing as retaliation for his pending suit in this Court, Civil Action No. GLR-17-2554, as there was no valid reason to put him on segregation. (Id.). He describes NBCI as having "a continued atmosphere of lack of physical safety" with "constant tension" between officers and inmates. (Id.).

Dicks was moved to Special Housing Unit No. 2 ("SHU #2") in early November 2019. (<u>Id.</u> at 21). He states that Disability Rights of Maryland, a non-profit organization, found in its 2016 investigative report that the special housing units at NBCI were "grossly inadequate" for inmates with serious mental health issues. (<u>Id.</u>). Dicks states that he is bipolar and has been medicated for the condition since 1998. (<u>Id.</u>). He states that the constitutional violations in SHU #2 include the fact that all three meals are served in the cell, medication is delivered to the cell, and the inmates assigned there are not allowed to go to the main legal library. (<u>Id.</u>). He further states that inmates housed in SHU #2 are not permitted to go to religious services with general population. (<u>Id.</u>). Dicks maintains he was entitled to due process prior to being placed on this restrictive housing status. (<u>Id.</u> at 22–23).

Dicks filed an ARP complaining that he was confined to his cell for twenty-two hours a day, "treated tragically different than other general population inmates," and denied access to see a psychologist. (<u>Id.</u> at 24). Defendant Greg Werner, Acting Warden, dismissed the ARP, and Dicks' appeal to Hill was also dismissed. (<u>Id.</u>). Dicks contends the dismissals of his ARP make Werner and Hill "liable" for violating his constitutional rights. (<u>Id.</u>). By the time Dicks appealed the Commissioner's dismissal of his ARP to the IGO, however, he had been moved out of SHU #2 to Unit 3. (<u>Id.</u> at 25). His IGO complaint was therefore dismissed as moot. (<u>Id.</u>).

### 5.    Access to Courts Claim

Dicks asserts that there is inadequate access to the law library at NBCI. (<u>Id.</u> at 25). He states that to go to the law library, an inmate must make a written request to the sergeant

and then be placed on a waiting list at the sergeant's discretion. (Id.). Only two inmates housed in SHU #2 are permitted in the law library at a time. (Id.). In Dicks' view, prison regulations that limit access to the law library or that place limits on the time, place, and manner in which a prisoner may engage in legal research are unconstitutional. (Id. at 26).

Dicks also takes issue with the quality of the materials available in the law library at NBCI. (Id.). He states that there are no books for use in research and the computer was broken when he attempted to prepare for an IGO hearing. (Id.). When he complained and asked to go to the "actual legal library in the main building," he was told the computers were being fixed and he would be added to the list. (Id.). Because he was not allowed to go to the main library, Dicks claims he was unable to prepare for either his IGO hearing or his case in this Court, Civil Action No. GLR-17-2554. (Id.).

Dicks filed an ARP with Werner regarding the inadequacies of the law library in SHU #2, and Werner dismissed the grievance because, in his view, Dicks has an alternative method of accessing legal materials by submitting requests through the Library Assistance to State Institutions program ("LASI"). (Id. at 27). Dicks responded that he cannot ask for copies of cases if he does not know the names of the cases he requires. (Id.). Dicks appealed to the Commissioner and to the IGO, but to no avail. (Id. at 28–29).

Dicks adds claims that his legal mail has been opened outside of his presence on several occasions during his confinement at NBCI. (Id. at 30–31).

### 6.    Access to Bathrooms

Dicks states that NBCI "still fails to provide sanitation (toilets/sinks) for [prisoners] to have access to during 'out of cell' exercise time." (Id. at 32). He explains that he suffers

from high blood pressure and a swollen prostate but is not permitted to go back to his cell to use the bathroom during recreation periods unless he is willing to forfeit the rest of his recreation period. (Id.). He states that NBCI "has been aware of these violations for at least six (6) years and has failed to try to correct" the problem. (Id.). Dicks states that he "filed suit for these same violations" in this Court and cites to Civil Action No. GLR-17-2554. See Dicks v. Bishop, No. GLR-17-2554, 2021 WL 4244608, at *2 (D.Md. Sept. 17, 2021).

Dicks asks this Court to order the Department of Public Safety and Correctional Services ("DPSCS") as well as NBCI to "correct constitutional violations," award Dicks damages and transfer him out of NBCI. (Compl. at 34).

**B.    Procedural History**

Dicks filed his Complaint and a Motion for Leave to Proceed in forma pauperis on September 16, 2020. (ECF No. 1). Plaintiff Andrew Joseph Dicks opposes the Motions. (ECF Nos. 19 & 22). Dicks has also filed a Motion to Appoint Counsel. (ECF No. 23). No hearing is necessary to resolve the matters pending. See Local Rule 105.6 (D.Md. 2021).

## II.    DISCUSSION

**A.    Standard of Review**

The Court will construe Defendants' Motions as motions to dismiss as they are not supported by declarations or exhibits. See Fed.R.Civ.P. 12(d). The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a

short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.**   <u>Analysis</u>

Defendants Gang, Palmer-Taylor, Werner, Stotler, Samura, and Nines argue that the allegations contained in the Complaint do not state a claim upon which relief may be granted; that claims Dicks has already litigated in prior cases are barred by the doctrine of collateral estoppel; and that the only claims asserted as to Gang, Werner, Stotler, and Nines are based on the inapplicable theory of <u>respondeat superior</u>. (<u>See</u> Mem. Supp. Defs.' Mot. Dismiss Pl.'s Compl. Alt. Summ. J., ECF No. 17-1).

**1.**   **Claims against DPSCS**

As an initial matter, the Court finds that DPSCS is not a "person" subject to suit under 42 U.S.C. § 1983 and any claim alleged against it by Dicks must be dismissed. Section 1983 states that "[e]very <u>person</u> who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983 (emphasis added). Dicks has not successfully described policies adopted and enforced by DPSCS that amount to a constitutional violation. <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 & n.55 (1978). As discussed below, none of Dicks' claims adequately state a constitutional claim whether by direct action of correctional employees, or by a challenged policy enforced by DPSCS. The claims against DPSCS will be dismissed.

2.      **Slip and Fall Claim**

Dicks' first claim regarding his fall in the shower at JCI constitutes a "slip and fall"

tort claim based on negligence. This is not a cognizable claim under § 1983 because it does

not arise under the Constitution or laws of the United States. See Davidson v. Cannon, 474

U.S. 344, 347–48 (1986). To the extent that his claim could be construed as asserting a

claim for cruel and unusual punishment under the Eighth Amendment to the Constitution,

which would require a showing of deliberate indifference to inmate health and safety, the

asserted facts do not support such a claim.

The "Eighth Amendment's prohibition on 'cruel and unusual punishments' imposes

certain basic duties on prison officials." Raynor v. Pugh, 817 F.3d 123, 127 (4th Cir. 2016)

(quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). Those duties include maintaining

"reasonable measures to guarantee the safety of the inmates." Id. (quoting Farmer, 511 U.S.

at 832). To demonstrate a violation of his Eighth Amendment rights, a plaintiff must satisfy

a two-part inquiry that includes both objective and subjective components. Id. First, to

satisfy the objective inquiry, the plaintiff "must establish a serious deprivation of his rights

in the form of a 'serious or significant physical or emotional injury,'" or a substantial risk

of such harm. Danser v. Stansberry, 772 F.3d 340, 346–47 (4th Cir. 2014) (quoting Brown

v. N.C. Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010)); see also Farmer, 511 U.S. at

834. The objective inquiry requires the Court to "assess whether society considers the risk

that the prisoner complains of to be so grave that it violates contemporary standards of

decency to expose anyone unwillingly to such a risk." Helling v. McKinney, 509 U.S. 25,

36 (1993). To satisfy the subjective component of the test, a plaintiff must establish that

the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297, 302–03 (1991)). Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety, in that the prison officials were both (a) aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (b) they actually drew that inference. Id. at 837.

While Dicks' doubts about the wisdom behind removing the slip-resistant mats in the shower are well taken, the alleged failure to ensure that the shower drain did not pose a tripping hazard does not amount to deliberate indifference to inmate health or safety. Further, Dicks' injury does not amount to serious harm and the risk created by the loose shower drain is not so grave that it violates contemporary standards of decency. This claim must therefore be dismissed.

### 3.    Supervisory Liability

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. Liability that is based on the defendant's role as a supervisor or employer of the asserted wrongdoer is known as a respondeat superior theory of liability. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (explaining that there is no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct

may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). Thus, supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

In his Opposition, Dicks contends that the "Warden and Commissioner are suppose[d] to right the wrongs of their subordinates" and claims they "took an oath to do so." (Pl.'s Opp'n Mot. Defs.' Mot. Dismiss Alt. Mot. Summ. J. ["Pl.'s Opp'n"] at 8, ECF No. 22). Dicks' allegations against Gang, Werner, Stotler, Nines, and Hill relate to their processing of Dicks' ARPs. Denial of Dicks' ARP requests and appeals does not alone impose liability. See Whitington v.Ortiz, 307 F.App'x 179, 193 (10th Cir. 2009) ("[D]enial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations." (quoting Larson v. Meek, 240 F.App'x 777, 780 (10th Cir. 2007))); Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002) ("[D]efendants' denial of [Plaintiff's] grievances did not state a substantive constitutional claim."). Dicks' contention that his ARPs somehow imposed a duty to provide him the remedy he seeks and that the failure to do so amounts to a constitutional violation is without merit. None of Dicks' ARPs

alerted these Defendants to conditions so grave that a failure to act amounts to constitutional violation. Thus, any claims against Defendants Gang, Werner, Stotler, Nines and Hill are based on a theory of respondeat superior that does not apply in § 1983 suits. The claims against these Defendants shall therefore be dismissed.

Likewise, Dicks' claim against Corizon must be dismissed. A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. See Austin v. Paramount Parks, Inc., 195 F.3d 715, 727–28 (4th Cir. 1999). As set forth below, Dicks has not stated a claim against Corizon and the Complaint against Corizon shall be dismissed.

### 4.      Medical Claim

Dicks filed his Complaint together with a Motion to Proceed in Forma Pauperis, which this Court granted. (See ECF Nos. 2, 5). To protect against abuse of the privilege to proceed without paying fees, 28 U.S.C. § 1915(e) requires a court to dismiss any claim by an indigent litigant that fails to state a claim upon which relief may be granted, is frivolous, or is malicious. In light of this standard, the Court must assess whether Dicks' claims against Getachew, DeRosa, and "RN April" state a claim upon which relief may be granted.

To prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017). A prisoner plaintiff must allege and provide some evidence he was suffering from a serious medical need and that defendants were aware of his need for medical attention but failed to either

provide it or ensure it was available. See Farmer, 511 U.S. at 834–37; see also Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017). Objectively, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); accord Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendant was subjectively reckless in treating or failing to treat the serious medical condition. See Farmer, 511 U.S. at 839–40; see also Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). Indeed, "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through other evidence that tends to establish the defendant knew about the problem. Scinto v. Stansberry, 841 F.3d 219, 226 (4th Cir. 2016). This includes evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. (quoting Farmer, 511 U.S. at 842).

Dicks' claims against Getachew, DeRosa, and "RN April" concern their alleged failure to inform him that he has mild sleep apnea. (Compl. at 14–15). Even assuming that mild sleep apnea is a serious medical need, Dicks' claim amounts to a disagreement with

the apparent medical assessment that his condition requires no treatment. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Additionally, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011) (quoting Bowring v. Godwin, 551 F.2d 44, 47–48 (4th Cir. 1977)). Dicks' claims against Getachew, DeRosa, and RN April therefore fail to state a claim and do not withstand scrutiny under 28 U.S.C. § 1915(e). Accordingly, the Court will dismiss the claims without requiring a response from these Defendants.

### 5.    Retaliatory Transfer Claim

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus, an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017).

In order to set forth a colorable First Amendment retaliation claim under § 1983, a plaintiff must allege that: (1) the plaintiff "engaged in protected First Amendment activity; (2) the defendant[] took some action that adversely affected [plaintiff's] First Amendment

rights; and (3) there was a causal relationship between [plaintiff's] protected activity and the defendant['s] conduct." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005) (citing Suarez Corp. Indus., 202 F.3d at 686).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." Shaw v. Murphy, 532 U.S. 223, 228–29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." Pell, 417 U.S. at 822. Specifically, the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. Booker, 855 F.3d at 545.

A plaintiff can establish retaliatory conduct if the defendant took an action that "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (internal quotation marks and citations omitted). A plaintiff must also demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action. See Constantine, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliatory act was temporally proximate to that activity. Id.

Here, Dicks asserts against no Defendant in particular that he was transferred from JCI to NBCI because of the grievances he filed. (Compl. at 17–19). His Opposition offers no correction for this deficit in his claim—and without explanation of who retaliated

against him, Dicks has failed to provide sufficient facts for Defendants to formulate a response. "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); see also Pierce v. King, 918 F.Supp. 932, 945 (E.D.N.C. 1996) (conclusory allegations of retaliation insufficient to state claim), vacated on other grounds, 525 U.S. 802 (1998).

Further, Dicks includes with his Complaint a written request dated March 8, 2020, that he submitted to his case manager at NBCI seeking a job similar to the one he held at JCI.[5] (Inmate Req. at 40,[6] ECF No. 1-1). Dicks was advised that he would have to be "infraction free for 1 year to be eligible" for a job; that his last infraction occurred on August 20, 2019; and that he would "have to be cleared through Intel due to [his] STG affiliation." (Id.). Thus, it is clear that Dicks' lack of a job assignment and his subsequent assignment to segregation was wholly unrelated to retaliatory animus. In the prison context, Dicks must establish "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 & n.4 (9th Cir. 1985). The "preservation of internal order and discipline" constitutes a legitimate goal of the correctional institution. Id. at 532. Further, assignment to administrative segregation does

---

[5] Dicks asserts the injury he sustained as a result of his transfer was the loss of his preferred job and his inability to obtain a similar job at NBCI. (Compl. at 17).

[6] When referencing exhibits without clear pagination, such as this one, citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

not create an atypical and significant hardship. <u>See</u> <u>Hewit v. Helms</u>, 459 U.S. 460, 470

(1983) (administrative segregation is part of the ordinary incidents of prison life), <u>see also</u>

<u>McKune v. Lile</u>, 536 U.S. 24, 26 (2002) (decisions where inmates should be housed is "at

the core of prison administrators' expertise"). For these reasons, Dicks' retaliation claim

shall be dismissed.

###### 6.     Access to Courts Claim

Prisoners have a constitutionally protected right of access to the courts. <u>See</u> <u>Bounds</u>

<u>v. Smith</u>, 430 U.S. 817, 821 (1977). However:

> <u>Bounds</u> does not guarantee inmates the wherewithal to
> transform themselves into litigating engines capable of filing
> everything from shareholder derivative actions to slip-and-fall
> claims.  The tools it requires to be provided are those that the
> inmates need in order to attack their sentences, directly or
> collaterally, and in order to challenge the conditions of their
> confinement.  Impairment of any other litigating capacity is
> simply one of the incidental (and perfectly constitutional)
> consequences of conviction and incarceration.

<u>Lewis v. Casey</u>, 518 U. S. 343, 355 (1996). "Ultimately, a prisoner wishing to establish an

unconstitutional burden on his right of access to the courts must show 'actual injury' to

'the capability of bringing contemplated challenges to sentences or conditions of

confinement before the courts.'" <u>O'Dell v. Netherland</u>, 112 F.3d 773, 776 (4th Cir. 1997)

(quoting <u>Lewis</u>, 518 U.S. at 355). "The requirement that an inmate alleging a violation of

<u>Bounds</u> must show actual injury derives ultimately from the doctrine of standing, a

constitutional principle that prevents courts of law from undertaking tasks assigned to the

political branches." <u>Lewis</u>, 518 U.S. at 349. Actual injury occurs when a prisoner

demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. Id. at 352–53 & n.4.

In Christopher v. Harbury, 536 U.S. 403 (2002), the Court characterized access-to-the-courts claims as being in one of two categories. Id. at 412–15. The first, termed "forward-looking" claims, id. at 415, "are cases where official action frustrates a plaintiff's ability to bring a suit at the present time." Jennings v. City of Stillwater, 383 F.3d 1199, 1208 (10th Cir. 2004). The second class, termed "backward-looking" claims, Christopher, 536 U.S. at 415, arise when a plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." Jennings, 383 F.3d at 1209 (alteration in original) (quoting Christopher, 536 U.S. at 413–14). In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress'" in the courts. Id. (alteration in original) (quoting Christopher, 536 U.S. at 415).

Whether the claim is forward- or backward-looking, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a non-frivolous legal claim. See Wardell v. Duncan, 470 F.3d 954, 959 (10th Cir. 2006) (denying access-to-courts claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). Conclusory allegations are not sufficient in this regard. Id. The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher, 536 U.S. at 415.

The difficulties Dicks describes regarding gaining access to a law library at NBCI do not by themselves constitute a violation of his First Amendment rights where, as here, he is provided access to legal materials through requests submitted to LASI and through contact with the Prisoner Rights Information System ("PRISM"). Dicks summarily claims that he was unable to prepare for an IGO hearing and for Civil Action No. GLR-17-2554 due to the manner in which inmates are given access to the library at NBCI. (Compl. at 26–27). Although he alleges that Werner denied his ARP that complained about the inadequacies of the law library and the system for accessing it, Dicks mentions no other Defendant in connection with this claim. Further, Dicks does not explain how access to the law library would have helped him in the civil action that was pending in this Court where a majority of his claims were dismissed for failure to exhaust administrative remedies and the remaining claims were dismissed because they lacked merit. See Dicks, 2021 WL 4244608, at *10–14. Dicks fails to state a claim against any of the named Defendants and therefore this claim must be dismissed.

### 7.     Access to Bathrooms

Dicks' claim regarding access to bathrooms during recreation periods was dismissed in Civil Action No. GLR-17-2554 because of his failure to exhaust administrative remedies. However, in the context of that case Defendants provided additional information indicating that Dicks' claim is without merit. That information revealed the following facts:

> [I]nmates at NBCI are provided recreation in accordance with the DPSCS Executive Directive for Inmate Recreation Programs. (Bishop Decl. ¶ 11; see generally Executive Directive No. OPS.145.0001, ECF No. 43-15). Recreation is not mandatory. (Bishop Decl. ¶ 11). The NBCI Inmate

Handbook informs inmates that they must stay in the courtyard until the conclusion of the recreation period. (Id.). Dayroom recreation that is conducted within the housing unit is structured by the individual housing unit's staff and opportunities for inmates to return to their cells varies by unit. (Id.).

On February 8, 2016, Dicks filed ARP No. NBCI-0346-16, complaining that he urinated on himself during recreation on February 6, 2016. (Feb. 2016 Restroom ARPs at 1, ECF No. 43-16). Dicks resubmitted the ARP on February 12, 2016. (Id. at 3). Nines dismissed the ARP, finding that as substantiated by two Matters of Record, inmates in Housing Unit 3 were provided an opportunity to return to their cells at least every fifteen minutes when the showers are being emptied and filled. (Id.). Thus, NBCI found that Dicks failed to return to his cell when given the opportunity and further failed to provide any evidence to substantiate his claim. (Id. at 1, 3, 5–9). The DOC subsequently dismissed Dicks' appeal. (Id. at 11–13).

On August 15, 2016, Dicks filed ARP No. NBCI-1842-16, in which he again alleged that he was forced to urinate on himself after being denied bathroom access during indoor recreation. (Aug. 2016 Restroom ARPs at 1, ECF No. 43-17). NBCI investigated the allegations and dismissed the ARP as without merit. (Id.). Video footage reviewed during the investigation showed Dicks standing in front of a hot pot and throwing water on his shirt and shorts in an attempt to appear as through he had urinated on himself. (Id.). Additionally, staff on duty reported that Dicks did not contact them about the need to use the bathroom. (Id. at 1–6). The DOC later dismissed Dicks' appeal. (Id. at 7–8).

Dicks, 2021 WL 4244608, at *5–6.

First, the Eighth Amendment does not require that inmates be permitted recreation time that may not be curtailed when an inmate requests return to his cell to relieve himself. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its

prison system so long as the conditions of confinement do not otherwise violate the Constitution." <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976), <u>see also</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995) (requiring an atypical and significant hardship as a prerequisite to the creation of a constitutionally protected liberty interest). Determination of rules regarding when and how inmates may return to their cells during recreation periods falls within the purview of decisions better left to correctional expertise. <u>See</u> <u>Sandin</u> 515 U.S. at 482 ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment."). This claim is therefore without merit and will also be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss (ECF Nos. 16 & 17). A separate Order follows.

Entered this 29th day of December, 2021.

_____/s/_____

George L. Russell, III
United States District Judge
